# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SPENCER SCHOTZ,                           Case No. 1:20-cv-250
      Plaintiff,                         Dlott, J.
                         Litkovitz, M.J.

    vs.


COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
      Defendant.

Plaintiff Spencer Schotz brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This

matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's

response in opposition (Doc. 12), and plaintiff's reply memorandum (Doc. 13).

## I. Procedural Background

Plaintiff filed his application for DIB in December 2016, alleging disability since

December 1, 2012, due to post-traumatic stress disorder ("PTSD"), chronic bilateral knee pain,

chronic lumbar pain, severe depression, severe panic attacks, attention deficit hyperactivity

disorder ("ADHD"), hypothyroid, and right shoulder impingement. The application was denied

initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de*

*novo* hearing before administrative law judge ("ALJ") Laura S. Twilley. Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing on December 6, 2018. On

March 22, 2019, the ALJ issued a decision denying plaintiff's DIB application. This decision

became the final decision of the Commissioner when the Appeals Council denied review on

February 19, 2020.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act through December 31, 2015.

2. The [plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2012 through his date last insured of December 31, 2015 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the [plaintiff] had the following severe impairments: major depressive disorder, cannabis use disorder, anxiety, degenerative disc disease and degenerative joint disease (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that through the date last insured, the [plaintiff] had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b), with no climbing of ropes, ladders or scaffolds. Occasionally climb ramps and stairs; kneel; crawl; and balance on uneven, moving, or narrow surfaces. Frequently stoop and crouch. No work involving any exposure to unprotected heights or dangerous moving machinery. Understand, remember and carry out simple tasks with simple instructions in a routine work setting. Few, if any changes, in work processes. No production rate work or strict production quotas. No interaction with the general public or tandem or teamwork. Occasional interaction with coworkers and supervisors.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1] Plaintiff's past relevant work was as an awning installer, a semi-skilled, heavy exertion job; route supervisor, skilled, light exertion (performed as heavy) job; and protective signal installer, a skilled, medium exertion (performed as heavy) job. (Tr. 29, 73).

7. The [plaintiff] was born [in] . . . 1968 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569(a).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from December 1, 2012, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 14-31).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would have been able to perform the requirements of approximately 555,100 unskilled, light jobs in the national economy, such as merchandise marker (300,000 jobs), housekeeper cleaner (200,000 jobs), and routing clerk (55,000 jobs). (Tr. 30, 74-75).

(1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff alleges two issues: that the ALJ erred by failing to (1) properly evaluate the opinion of plaintiff's treating physician, Dr. Emanuel Papadakis, and (2) include all the restrictions in the residual functional capacity ("RFC") by departing from the opinions of State agency psychological consultants Dr. Jaime Lai and Dr. Bruce Goldsmith.  (Doc. 10).  In response, the Commissioner argues that the ALJ reasonably evaluated the opinion of Dr. Papadakis and contends that the ALJ's RFC finding is supported by substantial evidence.  (Doc. 12).

### i.  The ALJ provided good reasons for discounting the treating physician's opinion

Plaintiff first argues that the ALJ erred in evaluating the opinion of his treating physician, Dr. Papadakis.  (Doc. 10 at PAGEID 1616-18).  Plaintiff argues that the ALJ "failed to provide

legitimately good reasons for rejecting the treating source opinion" and also failed to consider that Dr. Papadakis "was a treating source." (*Id*. at PAGEID 1616-17).

In response, the Commissioner argues that the ALJ reasonably evaluated the medical opinion of Dr. Papadakis and provided good reasons for not adopting Dr. Papadakis' opinion. (Doc. 12 at PAGEID 1626-29). The Commissioner contends that the ALJ correctly determined that Dr. Papadakis' opinion should not be given controlling weight because it was written more than two years after plaintiff's date last insured ("DLI"). (*Id*. at PAGEID 1626-27). The Commissioner also contends that Dr. Papadakis did not specify whether all his opined limitations applied prior to plaintiff's DLI. (*Id*. at PAGEID 1627-29)

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.[3]  Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the

---

[3] 20 C.F.R. § 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. This amendment does not apply to plaintiff's claims, which he filed in 2016.

following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

Plaintiff treated with psychologist, Dr. Papadakis, through the Veteran's Administration Medical Center. Dr. Papadakis initially saw plaintiff on May 30, 2014 for a one-hour individual psychotherapy session concerning his depression, personality problems, ADHD, and difficulty obtaining and maintaining gainful employment. (Tr. 1418-21). Dr. Papadakis opined that plaintiff had difficulty with depression, irritability, obsessions, ruminations, perfectionism, and difficulty getting along with other people. (Tr. 1418). Based on this initial session, Dr.

Papadakis opined that plaintiff was "not able to obtain and maintain gainful employment" and was "unemployable." (Tr. 1419). On mental status examination, Dr. Papadakis reported that plaintiff did not suffer from hallucinations or delusions, was not suicidal, had no homicidal ideations, and was "a little bit irritable and [had] obsession and compulsive ruminations, but he [was] not dangerous to self or others." (*Id*.). Instead, Dr. Papadakis opined that plaintiff's "impulsivity, irritability, obsessive ruminations, perfectionism, characterological problems, [and] ADHD [led] him to lose jobs and relationships consistently in the last 20 years, and no job potential in the last [two] years which leads him to be unemployable." (*Id*.). Dr. Papadakis assessed plaintiff with major depression and ADHD and opined that plaintiff's "lack of empathy and poor interpersonal characteristics [were] very chronic" and would lead plaintiff to be "unemployable in the future as well as he has been in the last [two] years completely unemployable." (*Id*.).

Plaintiff did not show up for his next appointment which was scheduled to take place on July 24, 2014 because his house had flooded. (Tr. 1421). Dr. Papadakis spoke with plaintiff on the telephone and reported that plaintiff was following up on his therapeutic recommendations and posed no imminent danger to himself or others. (*Id*.).

Plaintiff's second psychotherapy session with Dr. Papadakis took place on September 11, 2014. (Tr. 1379-80). Dr. Papadakis reported that plaintiff continued to deal with severe depression, irritability, and difficulty with concentration and attention. (Tr. 1380). Dr. Papadakis opined that plaintiff was "unemployable and should be given a non-service-connected unemployability." (*Id*.). On mental status examination, Dr. Papadakis reported plaintiff had no hallucinations or delusions; plaintiff was not suicidal and had no homicidal ideations; and

plaintiff had baseline depression, irritability, difficulty with concentration and attention, and chronic pain. (*Id.*).

On November 7, 2014, plaintiff reported that he had a panic attack and "started thinking about dying." (Tr. 1347). Plaintiff went to the hospital and was "negative on EKG and everything else and there was nothing going on." (*Id.*). Dr. Papadakis noted that plaintiff was using cognitive behavioral supportive psychotherapy to deal with his depression, anxiety, ADHD, and panic and had made realistic plans to obtain housing, take care of himself, and obtain part-time employment. (*Id.*). On mental status examination, Dr. Papadakis reported plaintiff had no hallucinations or delusions; plaintiff was not suicidal and had no homicidal ideations; and plaintiff had difficulty with concentration and attention, chronic ADHD problems, some depression, but dysthymic level. (*Id.*). Dr. Papadakis remarked that despite plaintiff's panic attack that put him in the hospital plaintiff "is looking forward to making realistic plans about the [future]." (*Id.*).

On December 3, 2014, plaintiff reported continued depression, anxiety, and difficulty with concentration and attention. (Tr. 1346). Dr. Papadakis stated that plaintiff had improved his financial situation and felt "better." (*Id.*). Dr. Papadakis reported plaintiff had baseline depression but no hallucinations, delusions, or suicidal or homicidal ideations. (*Id.*). On January 7, 2015, Dr. Papadakis noted that plaintiff was isolating at home and continued to use cognitive behavioral supportive psychotherapy to deal with his depression and function in the community. (Tr. 1345). On June 3, 2015, approximately six months after plaintiff's previous psychotherapy appointment, plaintiff reported he had anxiety all the time and avoided interpersonal contact. (Tr. 1325). Plaintiff further reported that he went to the ER recently because he felt like he had a heart attack. (*Id.*). Plaintiff also reported that he enjoyed spending time with his children when

they visited him on Wednesdays and on the weekend. (Tr. 1326). On mental status examination, Dr. Papadakis reported plaintiff had no hallucinations or delusions; plaintiff was not suicidal and had no homicidal ideations; and plaintiff had baseline depression, anxiety, panic attacks several times a week where plaintiff felt he was having a heart attack, depression and pessimism, and some difficulty with concentration and attention. (*Id*.).

The record demonstrates that plaintiff's June 3, 2015 therapy appointment with Dr. Papadakis was plaintiff's final psychotherapy appointment before his December 31, 2015 DLI. (*See* Tr. 1325-26, 1317-19). Plaintiff's following appointment with Dr. Papadakis occurred over six months later on January 27, 2016. (Tr. 1317-19).

On October 16, 2018, roughly twenty-two months after plaintiff's DLI, Dr. Papadakis completed a Mental Impairment Questionnaire on behalf of plaintiff. (Tr. 945-48). Dr. Papadakis indicated he had been treating plaintiff for about four years and that plaintiff had been diagnosed with severe chronic major depression with anxiety. (Tr. 945). Dr. Papadakis opined that plaintiff would be off task "20% or more" in an average typical work week due to his physical and psychological problems and would be absent from work "more than three times a month." (*Id*.). Dr. Papadakis also found that plaintiff was either moderately, markedly, or extremely limited in every mental health work-related activity. (Tr. 946-47). Dr. Papadakis opined that there was a reasonable medical basis for believing that plaintiff was disabled prior to December 31, 2015. (Tr. 948). Dr. Papadakis also commented that plaintiff was not able to maintain or gain full employment. (*Id*.).

The ALJ gave "little weight" to Dr. Papadakis' assessment of plaintiff's functional capacity because: (1) it was generated after plaintiff's insured status lapsed and did not indicate when the level of disability he noted in the form would have begun; and (2) the objective

medical evidence during the relevant period did not support its limitations prior to the DLI. (Tr. 28). For the reasons that follow, the ALJ's decision to give "little weight" to Dr. Papadakis' opinion is supported by substantial evidence in the record, and the ALJ provided "good reasons" for discounting the treating physician's medical opinion. *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) ("Unlike the cases where [the Sixth Circuit has] held that the ALJ failed to state 'good reasons' for rejecting the treating physician's opinion, here the ALJ did not merely cast aside the treating physician's opinion without explanation.").

The ALJ thoroughly considered the evidence as a whole and gave comprehensive reasons for discounting Dr. Papadakis' opinions. First, plaintiff argues that the ALJ failed to consider in her evaluation that Dr. Papadakis "was a treating source." (Doc. 10 at PAGEID 1616). Contrary to plaintiff's argument, however, the ALJ's decision expressly acknowledges the fact that Dr. Papadakis "had been treating [plaintiff] for about four years[.]" (Tr. 28; *see also* 22-25, 28). Accordingly, the ALJ did not err in this regard.

Second, to the extent plaintiff contends the ALJ failed to analyze Dr. Papadakis' opinions for controlling weight, the ALJ's error was harmless. *Cf. Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). A violation of the "good reasons" rule can be deemed to be "harmless error" if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § [404.1527(c)(2) ] . . . even though she has not complied with the terms of the regulation." *Id*. (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547). Here, Dr. Papadakis' opinion that plaintiff was "disabled prior to December 31, 2015" (Tr. 948) is patently deficient.

The ALJ reasonably discounted the opinion of Dr. Papadakis because it was produced over twenty-two months after plaintiff's DLI. (Tr. 28). To obtain DIB benefits, plaintiff must establish that the "onset of disability" was prior to December 31, 2015, the date his insured status expired, and that his disability lasted for a continuous period of twelve months. 42 U.S.C. § 423(a), (c), (d)(1)(A). *See Smith v. Comm'r of Soc. Sec.*, 202 F.3d 270 (6th Cir. 1999) (citing *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). Post-insured status evidence of new developments in a claimant's condition is generally not relevant. *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981). Such evidence may be examined, however, when it establishes that the impairment existed continuously and in the same degree from the date plaintiff's insured status terminated. *See Johnson v. Sec'y of H.E.W.*, 679 F.2d 605 (6th Cir. 1982). To the extent that evidence subsequent to the DLI is relevant, it "'must relate back to the claimant's condition prior to the expiration of [the] date last insured.'" *Thomas v. Comm'r of Soc. Sec.*, No. 2:18-cv-108, 2019 WL 2414675, at *3 (S.D. Ohio June 7, 2019) (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)). *See also King v. Sec'y of HHS*, 896 F.2d 204, 205-06 (6th Cir. 1990) (post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of DLI).

Here, plaintiff's insured status expired in December 2015, but Dr. Papadakis did not complete the Mental Impairment Questionnaire until October 2018. Dr. Papadakis expressed that he had been treating plaintiff for approximately four years. The evidence of record establishes that plaintiff's initial psychotherapy appointment with Dr. Papadakis was on May 30, 2014 and the final session in the record commenced on October 16, 2018. (Tr. 1203, 1418-21). During this four-year period, plaintiff had a total of twenty-one psychotherapy sessions with Dr. Papadakis. (Tr. 1418-21, 1379-80, 1346-47, 1345-46, 1344-45, 1325-26, 1317-19, 1306-07,

1280-81, 1273-74, 1268, 1267, 1256-57, 1255, 1254, 1244-45, 1241-42, 1231, 1220-21, 1203). Six of the sessions occurred prior to the DLI, with the sixth psychotherapy session occurring six months prior to the DLI. (*See* Tr. 1325-26, 1317-19). Yet, Dr. Papadakis did not clearly distinguish between plaintiff's limitations before and after his DLI. Rather, the only evidence that could plausibly establish that plaintiff's impairments may have existed prior to the DLI is a check mark next to "YES" to the question "Is there a reasonable basis for believing that this patient was disabled prior to December 31, 2015?" (Tr. 948). In the "Additional Comments or Explanations" section immediately following this question, Dr. Papadakis commented, "Patient not able to maintain/gain full employment" without identifying his basis for concluding that plaintiff was disabled prior to the date plaintiff's insured status lapsed. (*Id.*).

It is not clear from Dr. Papadakis' opinion whether the severity of plaintiff's mental impairments in 2018 was similar to that prior to December 31, 2015, plaintiff's DLI. Moreover, plaintiff makes no attempt, other than citing to specific sentences within select treatment notes, to show how Dr. Papadakis' October 2018 opinion relates back to plaintiff's conditions before his insured status lapsed. Accordingly, as Dr. Papadakis failed to specify whether the particular limitations he assessed in October 2018 were also present prior to December 31, 2015, the date plaintiff's insured status expired, the ALJ reasonably considered this factor in weighing Dr. Papadakis' opinion. *Gebhart v. Comm'r of Soc. Sec.*, No. 2:19-cv-3066, 2020 WL 913617, at *4 (S.D. Ohio Feb. 26, 2020), *report and recommendation adopted*, 2020 WL 1289737 (S.D. Ohio Mar. 18, 2020); *Love v. Comm'r of Soc. Sec.*, No. 1:15-cv-408, 2016 WL 3083381, at *11 (S.D. Ohio May 31, 2016), *report and recommendation adopted*, 2016 WL 5387693 (S.D. Ohio Sept. 27, 2016).

Further, the Court notes that the questionnaire completed by Dr. Papadakis consisted of a checkbox form in which Dr. Papadakis provided no explanation or medical findings to support his opinion. (Tr. 945-48). An ALJ does not err by giving a checkbox form little weight "where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (court found no error where the treating physician simply noted plaintiff's impairments in the "remarks" section of the checkbox physical capacity evaluation form) (citing *Rogers v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 WL 799332 (6th Cir. June 9, 2000)) ("treating physician's documentation of impairments on form with checked-off boxes was not entitled to great weight when no further explanation given"); 20 C.F.R. § 404.1527(c)(3) ("The better an explanation source provides for a medical opinion, the more weight we will give that medical opinion."). Accordingly, the ALJ properly discounted the opinion of Dr. Papadakis which was contained in the checkbox form with no accompanying explanations for the opinions and conclusions contained within.

Third, the ALJ reasonably rejected Dr. Papadakis' opinion that plaintiff was "disabled" and "unemployable." (Tr. 23). Dr. Papadakis opined that plaintiff would be "unemployable in the future as well as he has been in the last [two] years completely unemployable." (Tr. 1419). As the ALJ reasonably noted, however, Dr. Papadakis opined that plaintiff was unemployable after only his initial session with plaintiff, and his opinion appeared to be based on plaintiff's subjective report that he had not worked in two years. (Tr. 23, 1418-21). Additionally, the ALJ noted that the term "unemployability" used by Dr. Papadakis is a term commonly used by the Veterans Administration in its disability program. (Tr. 23). As the ALJ correctly concluded, a finding that a claimant is disabled or unable to work is one reserved to the Commissioner based

on Social Security rules and regulations. (Tr. 23). *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 535 (6th Cir. 2019) (explaining that "government agencies have different criteria for determining whether someone is disabled."). Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that his patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. § 404.1527(d)(3). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (opinion by medical source on issues reserved to Commissioner is never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Therefore, Dr. Papadakis' opinion that plaintiff was "unemployable" or "disabled" is not entitled to any special weight.[4]

In addition, the ALJ gave "little weight" to Dr. Papadakis' opinion because the "objective medical evidence" did not support the limitations he assessed prior to the DLI. (Tr. 28). Specifically, the ALJ reasonably determined that the limitations and restrictions Dr. Papadakis assessed were inconsistent with the other medical evidence of record, which consisted of largely normal examination findings. (Tr. 28-29; *see also* Tr. 1421, 1419, 1408-09, 1387-88, 1380, 1375-76, 1361, 1353-54, 1346-47, 1341-42, 1326). Moreover, in addition to largely normal mental status examinations, the ALJ noted that there were periods where plaintiff did not use his prescribed and recommended psychotropic medications. (Tr. 16, 22-26). The ALJ also referenced periods where plaintiff did not engage in recommended mental health treatment for his conditions as evidence that was "inconsistent with severe and disabling mental impairments,

---

[4] For this same reason, plaintiff's reference to the 70% service-connected disability finding by the VA (Doc. 10 at PAGEID 1618) is not entitled to any special weight. (*See* Tr. 27). The ALJ noted, "A finding by the Department of Veterans Affairs that the claimant is disabled does not necessarily mean that the claimant meets the disability requirements of the Social Security Act. Therefore, the undersigned [ALJ] gives little weight to the claimant being on disability pursuant to another government agency's definition of disability." (*Id.*). The Court notes that plaintiff assigns no specific error to the ALJ's weighing of the disability determination made by the VA.

which [plaintiff had] alleged." (Tr. 26; *see also* Tr. 16). Further, the ALJ noted that plaintiff at times used marijuana instead of the prescribed and recommended psychotropic medications even though he had been advised to discontinue all use of marijuana. (Tr. 26).

Finally, the ALJ cited evidence that plaintiff continually failed to follow Dr. Papadakis' recommendations to engage in group counseling and "Chapter 31." (Tr. 24-25, 27).[5] As alluded to by the ALJ, Dr. Papadakis directed plaintiff to Chapter 31 on June 3, 2015. (Tr. 27). A treatment note from January 3, 2017, however, notes that plaintiff had "been encouraged for the last [two] years to go to Chapter 31 and take vocational rehabilitation. Finally he is meeting with them this week." (Tr. 1268). There is no evidence in the record before the Court, however, that plaintiff ever engaged with Chapter 31.

The above evidence substantially supports the ALJ's finding that Dr. Papadakis' opinion was entitled to little, and not controlling, weight. Therefore, although the ALJ failed to analyze Dr. Papadakis' opinion for controlling weight, the error was harmless. The ALJ thoroughly reviewed the evidence of record and explained the "good reasons" for giving Dr. Papadakis' opinion "little weight." Plaintiff has not cited any relevant evidence of record to show the ALJ's analysis lacks substantial support. Accordingly, plaintiff's assignment of error is overruled.

### ii. The ALJ did not err in its RFC determination

Plaintiff additionally argues that the ALJ erred in formulating the RFC by failing to adopt the state agency psychologists' restriction that plaintiff be limited to "brief, intermittent, superficial interaction with co-workers and supervisors." (Doc. 10 at PAGEID 1618-19) (internal quotations omitted). Plaintiff specifically argues that the ALJ erred by limiting

---

[5] "Chapter 31" is a Veterans Administration vocational and employment program for veterans with a service-connected disability. *See* https://www.va.gov/careers-employment/vocational-rehabilitation/ (last visited on June 25, 2021).

plaintiff's interaction with co-workers and supervisors to "occasional" as opposed to "superficial." (*Id.* at PAGEID 1619) (internal quotations omitted). In response, the Commissioner argues that the ALJ did not err in declining to adopt every limitation of the state agency psychologists because there is no requirement that the ALJ adopt opinions verbatim in assessing plaintiff's RFC. (Doc. 12 at PAGEID 1629).

Dr. Lai, a state agency psychologist, reviewed plaintiff's file in February 2017 and concluded that plaintiff was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 91). Dr. Lai further opined that plaintiff would do best working in a separate area from coworkers and having only brief conventional transactions with them to prevent exacerbation of his symptoms. (Tr. 92). Dr. Lai also opined that plaintiff was moderately limited in his ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*). Based on these limitations, Dr. Lai opined that plaintiff could interact with coworkers and supervisors on a brief, intermittent, and superficial basis. (*Id.*). State agency psychologist Dr. Goldsmith reviewed plaintiff's file upon reconsideration in April 2017 and affirmed Dr. Lai's assessment. (Tr. 106-108).

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. § 404.1513a. In determining disability, the ALJ will consider the medical opinions in the case

record along with the other relevant evidence. 20 C.F.R. § 404.1527(b) (citing 20 C.F.R. § 404.1520b). While physicians may render an opinion on a claimant's functional capacity, the ultimate responsibility for determining a claimant's capacity to work lies with the Commissioner. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). A claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC at the administrative hearing level lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). This includes weighing the relevant medical opinions of record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). *See also* 20 C.F.R § 404.1527(c)(2).

In this case, the ALJ's RFC finding, in pertinent part, provides that plaintiff can have "[n]o interaction with the general public or tandem or teamwork. Occasional interaction with coworkers and supervisors." (Tr. 17). Plaintiff argues that the ALJ erred by failing to include the state agency psychologists' restriction that plaintiff be limited to "superficial" interactions with coworkers and supervisors despite giving these opinions significant weight. (Doc. 10 at PAGEID 1619). Plaintiff contends that "'occasional' and 'superficial' are not coterminous." (*Id.*).

It is well-established, however, that an ALJ is not required to adopt a medical source's opinion on limitations verbatim in assessing a claimant's RFC. *See* SSR 96-5p, 1996 WL 374183, at *54 ("Although an adjudicator may decide to adopt all of the opinions expressed in a

medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment"). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (finding no error where ALJ gave great weight to state agency psychologists' opinions, which included a limitation to superficial interaction, and ALJ's RFC limited claimant to occasional, not superficial, interaction). Therefore, even if Drs. Lai and Goldsmith's opinion can be construed as requiring "superficial" interactions with supervisors, the ALJ was not required to accept *verbatim* this limitation.

Plaintiff does not explain how the ALJ's limitation of "occasional" as opposed to "superficial" interaction with coworkers and supervisors, without further limitation, is not supported by substantial evidence. Plaintiff has not shown that the ALJ erred by failing to fully account for his alleged impairments and resulting limitations in the RFC finding. Plaintiff has not shown, or identified any evidence in the record, that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ with regard to contact with coworkers and supervisors. Accordingly, the ALJ's RFC is supported by substantial evidence, and plaintiff's assignment of error regarding the ALJ's RFC assessment should be overruled.

## III. Conclusion

For the reasons stated herein, the undersigned recommends that the ALJ's decision

should be **AFFIRMED** and that this matter be closed on the docket of the Court.

Date: _____6/26/2021_____

Karen L. Litkovitz
Chief United States Magistrate Judge

SPENCER SCHOTZ,                            Case No. 1:20-cv-250
        Plaintiff,                         Dlott, J.
                                      Litkovitz, M.J.

        vs.

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).